IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SONJA E. HAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06CV338-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Sonja E. Hand brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On April 23, 2004, plaintiff filed an application for disability insurance benefits. On July 12, 2005, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on December 1, 2005, in which he found that the plaintiff has severe impairments of chronic obstructive pulmonary disease, gastroesophageal reflux disease, degenerative disc disease, osteoarthritis, and possible claudication in the lower extremities. He concluded that she is not disabled because

she retains the residual functional capacity to perform her past relevant work as an assembler, cashier, forklift operator and sewing machine operator. On February 8, 2006, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Plaintiff's Noncompliance

In her application for benefits, plaintiff asserts that she is disabled due to chronic

obstructive pulmonary disease (COPD) and arthritis.  She alleges that she has a breathing machine and that she "can't hardly breathe." (R.60).  At the administrative hearing, plaintiff testified that, because of shortness of breath, she couldn't walk and "couldn't even really clean [her] house too good," and that she is able to "maybe [vacuum] about a fourth of [her] living room at a time," then she has to sit down and catch her breath.  (R. 254, 257). The medical record reveals that plaintiff has been treated for respiratory symptoms, including coughing, wheezing and shortness of breath, on a number of occasions dating back as far as February 2000.  Plaintiff was admitted to Southeast Alabama Medical Center for six days in November 2003 due to acute exacerbation of COPD and for four days in April 2004 because of pneumonia.  Her physicians have prescribed nebulizer breathing treatments.   (Exhibits 1F, 2F, 3F, 4F, 9F, 10F).

Plaintiff was treated by a pulmonary specialist, Dr. Dale Prophet.  (Exhibits 2F, 6F). Dr. Prophet performed an office spirometry on November 4, 2003 which showed an FVC of 1.16 l or 40% of predicted, and an $FEV_1$ of 660 cc or 28% of predicted.  (R. 122-23).  Dr. Prophet characterized these results as showing "significant lung disease." (R. 91).  He stated:

> The patient has fairly significant emphysema but still has some degree of bronchospasm.  As discussed with her improvement would be a function of medications but also it would be linked directly to her ability to quit smoking or otherwise she will have very poor short-term and long-term outcome with significant morbidity and premature mortality.  We had a long discussion about the need to quit smoking and means to try and do so.  She has tried patches, Zyban, etc., in the past without any success.

(R. 121).  During a follow-up visit on December 22, 2003, after plaintiff's hospitalization for acute exacerbation of her COPD, Dr. Prophet conducted another office spirometry.  He noted

that it was "significantly improved with FVC now 1.5 liters or 52% of predicted and FEV-1 of 1.1 liters or 47% of predicted." He told plaintiff that "if she would quit smoking she would continue to improve." (R. 117). In a March 24, 2004 office note, Dr. Prophet indicated that plaintiff was "about the same," and stated, "As long as she continues to smoke she will continue to have major limitations[1] and deterioration in lung function." (R. 116). The medical record reflects that plaintiff's treating family practice physician, Dr. R. Michael O'Brien, prescribed Wellbutrin at plaintiff's request on February 7, 2000 and again on November 24, 2003 to assist plaintiff with smoking cessation. (R. 139, 148-49).

In determining that plaintiff retains the residual functional capacity to perform the full range of light work, the ALJ reasoned:

> The undersigned notes that the claimant has been noncompliant with medical treatment which would improve her breathing and alleviate symptoms associated with smoking. The medical record shows claimant's shortness of breath, dyspnea, sputum, and coughing are secondary to smoking and that smoking aggravates her GERD symptoms. Throughout the medical record, her treating pulmonary specialist has advised her to stop smoking and warned her that she will have "major limitations and deterioration of lung function" as long as she continues to smoke (Exhibit 2F/1).

R. 18).

The ALJ's determination of plaintiff's RFC and his resulting conclusion that she is not disabled appear to be significantly based on the ALJ's finding of noncompliance. Under these circumstances, the ALJ was required to determine that the noncompliance was unjustified. Dawkins v. Bowen, 848 F.2d 1211 (11th Cir. 1988). Additionally, "[t]he burden

---

[1] Dr. Prophet did not translate his assessment of "major limitations" into a physical residual functional capacity assessment, and there is no RFC assessment provided by any other treating or consulting physician.

4

of producing evidence concerning unjustified noncompliance is on the [Commissioner]." Id. at 1214 n. 8.

In Seals v. Barnhart, 308 F.Supp.2d 1241 (N.D. Ala. 2004), the court considered the issue of noncompliance with respect to a plaintiff who suffered from chronic obstructive pulmonary disease and who failed to follow her doctor's instructions to stop smoking. The plaintiff's failure to stop smoking was central to the ALJ's determination that plaintiff was not disabled. The court stated:

> Breaking an addiction is not a simple matter of rationally deciding to cease the addictive behavior, whether it be smoking, drinking, or drug abuse. . . . In the case of nicotine addiction, a mere failure to successfully stop smoking will not support a finding of willful refusal to try. If the plaintiff was unable to stop smoking because she was addicted to nicotine, her noncompliance would not be unjustified. The burden is on the Commissioner to produce evidence of unjustified noncompliance. In the present case, the ALJ made no finding that the plaintiff was actually able, mentally and physically, to stop smoking. Nor did the Commissioner cite to any evidence, other than the plaintiff's failure to stop smoking, to show that her noncompliance was unjustified.

Id. at 1251 (citation omitted). Likewise, in the present case, the ALJ made no finding that the plaintiff was actually able to stop smoking but willfully refused to do so. Thus, the ALJ erred in relying on plaintiff's noncompliance with her physician's recommendation to stop smoking to support his finding regarding plaintiff's RFC. See Shramek v. Apfel, 226 F.3d 809, 813 (7th Cir. 2000)("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer – directly caused by smoking – who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to

stop. This is an unreliable basis on which to rest a credibility determination.").

### The ALJ's Credibility Determination

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)).

In this case, plaintiff has produced spirometry reports demonstrating that she has significant pulmonary disease, and her treating specialist's assessment that she suffers from "major limitations." (R. 116-17, 122-23). In assessing plaintiff's credibility, the ALJ stated:

6

> In evaluating the claimant's credibility concerning her symptoms and their effect, the undersigned finds that claimant is not fully credible concerning the intensity, persistence, and limiting effects of her alleged symptoms and the extent to which they limit his [sic] ability to perform basic work activities. For instance, claimant testified that she stopped working at General Electric in 2000 due to a layoff; however, the record reveals the work ended in September 2001 (Exhibits 1E and 3D).

(R. 17). However, plaintiff did *not* testify that she stopped working in 2000. Instead, she testified as follows:

> Q   Ms. Hand, what was the last job you had before you worked at the flea market when you were working full time, what were you doing?
>
> A   I worked at GE Small Motors.
>
> Q   You were working at GE, building small motors?
>
> A   Yeah.
>
> Q   Okay. When did you stop that job?
>
> A   *2001*.
>
> \* \* \* \* \*
>
> Q   Okay. What happened with GE that you had to leave there *in 2001*?
>
> A   Laid off.

(R. 253, 270)(emphasis added). Exhibit 1E, relied upon by the ALJ to discredit plaintiff's testimony, is plaintiff's own disability report submitted in support of her claim for disability benefits. Plaintiff reports that she worked performing "gen labor/finishing department" for a "small motor manufacturer" from 1996 through September 2001. (R. 61).

Continuing his credibility determination, the ALJ stated further:

> She alleges that she has been disabled since January 1, 2002, but she has been

> working two days a week at a flee [sic] market since November 2002. She works eight-hours [sic] a day on Saturday and Sunday operating her small business without help. She order [sic] supplies, waits on customers, and only occasionally misses work. She acknowledged at the hearing, that she could work more hours if the flee [sic] market was open more days.

(R. 17). Plaintiff testified that she works about sixteen hours at the flea market on weekends and that she works alone in her booth. (R. 249, 258). However, she also testified that her flea market work does not require much walking and that it mostly consists of taking money from customers. Plaintiff does not assist the customers in lifting or carrying the items. (R. 255-58). In response to questioning from the ALJ, she further testified as follows:

> Q    . . . You work two days a week. Is there any reason you couldn't work more days than two days a week if the flea market were open?
>
> A    Not if it was open, I could if I can get somebody to help me sometimes.
>
> Q    Okay. Do you have anybody to help you now?
>
> A    Sometimes my daughters help me.
>
> Q    Okay. Do they need to help you or are they happy to help you, I mean, is it just something to do with Mom or is it something you can't do and that's why they're there?
>
> A    Well, if I'm sick or whatever, they'll work for me.
>
> Q    Okay. Are you sick a lot?
>
> A.   I have bronchitis quite a bit.
>
> Q    Okay. Is that worse in the winter than in the summer?
>
> A    No, it's all the time.
>
> Q    You have it year-round. Okay. About how many times a month do you think you might miss a day or two of work because of bronchitis?

8

>   A       I'd say I missed this past Saturday afternoon, but it wasn't bronchitis, it was my back.
>
>   Q       Okay.  All right.  Well, thank you so much.
>
>   ALJ:    Counsel, if you'd like to present your case.

(R. 252-53).  As noted above, plaintiff's testimony was that she could work more hours if the flea market were open more days, and "if [she] could get somebody to help [her] sometimes." (R. 252).  Additionally, she testified that her daughters work for her when she is sick, that she is sick quite a bit with bronchitis, and that she has bronchitis year-round.  (R. 252-53).  The ALJ's finding that plaintiff "only occasionally misses work" is not supported by evidence of record.

The ALJ further observed that plaintiff's claims of disability are inconsistent with her self-reported activities of daily living, because "[s]he testified that she cooks, washes dishes, does the housework and laundry, and drives 20 miles each way to the flee [sic] market."  (R. 17).  The ALJ's summary of plaintiff's activities of daily living ignores plaintiff's testimony that she is only able to vacuum about one-fourth of her living room before stopping to catch her breath (R. 257), that she can't "even really clean [her] house too good" (R. 254), and that her "cooking" often consists of microwaving and her lunch is usually a sandwich (R. 263, 267).[2]  The reasons advanced by the ALJ for rejecting plaintiff's testimony regarding her complaints of shortness of breath due to COPD are not supported by substantial evidence of record.

---

[2] The remainder of the ALJ's credibility discussion pertains to the objective evidence relating to plaintiff's degenerative disc disease, osteoarthritis, and possible claudication and does not relate to her complaints of shortness of breath due to her respiratory ailments.

## CONCLUSION

For the foregoing reasons, and upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and remanded for further proceedings to determine whether plaintiff's noncompliance with her physician's recommendation to quit smoking is justified and, if so, whether the limitations caused by her COPD preclude her performance of her past relevant work or other work.[3]

A separate judgment will be entered.

Done, this 12th day of April, 2007.

                                            /s/ Susan Russ Walker
                                            SUSAN RUSS WALKER
                                            UNITED STATES MAGISTRATE JUDGE

---

[3] The court anticipates that, on remand, the Commissioner will consider the arguments raised by plaintiff in this appeal.